IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEANNE K. CONAWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-54-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jeanne K. Conaway requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 28, 1960, and was forty-nine years old at the time of the administrative hearing. She has past relevant work as a retail cashier/stocker/store keeper, waitress, and small parts assembler. (Tr. 20). The claimant alleges that she has been unable to work since October 26, 2006, because of a back injury, pinched nerve in her back, high blood pressure, obesity, diabetes, and a left ankle problem. (Tr. 150).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 30, 2007. The Commissioner denied her applications. ALJ Glenn A. Neel held an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 15, 2010. The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to lift/carry ten pounds frequently and twenty pounds occasionally, stand/walk for two hours in an eight-hour

workday, sit for eight hours in an eight-hour workday, balance and stoop occasionally but never climb, kneel, crouch, crawl, or reach overhead with her right arm. (Tr. 13). The ALJ further limited the claimant to: (i) performing simple tasks with routine supervision; (ii) relating to supervisors and peers on a superficial work basis; and (iii) having no contact with the general public (Tr. 14). The ALJ concluded that although the claimant could not return to her past relevant work, she was not nevertheless not disabled because there was other work in the national economy that she could perform, *i. e.*, machine operator, assembler, and bench hand. (Tr. 21).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider all of her physical and mental limitations in determining her RFC; (ii) by failing to consider the effect of obesity on her RFC; (iii) by failing to properly analyze her credibility; and (iv) by failing to properly analyze the opinion of her treating physician Dr. J. Arden Blough, M.D. The Court finds that the ALJ *did* fail to properly analyze the medical evidence of record, including Dr. Blough's opinion, and the Commissioner's decision must therefore be reversed.

The claimant injured her Achilles tendon in a work-related accident which ultimately ruptured, resulting in two surgeries and several months of physical therapy. (Tr. 231-422). During the claimant's initial physical therapy evaluation, the claimant was noted to have joint inflammation and moderate-severe pain levels. (Tr. 313). In the ultimate physical therapy discharge summary, claimant was reported to have mild pain

and limitation during and/or after specific activities of daily living which affected her performance, mild-moderate limitation in specific work activities affecting her performance, and severe pain and limitation in recreation activities affecting her performance. (Tr. 326). She was noted to have mild pain while squatting, mild pain while climbing stairs, mild-moderate pain when standing for prolonged periods of time, and she had difficulty with prolonged ambulation because of pain. (Tr. 327).

  State examining physician Dr. Gordon B. Strom, Jr., M.D. examined the claimant on February 22, 2007. Dr. Strom wrote in his narrative that the claimant injured her back in a car accident which resulted in self-described "sciatic nerve symptoms." (Tr. 432). As a result of her back injury, the claimant reported that she has had pain and loss of sensation in her right leg and ankle since December 2006. (Tr. 432). During the examination, Dr. Strom noted that the claimant was "largely limited by obesity" with respect to her range of motion in her spine and tenderness in her lower back. (Tr. 433). The range of motion in her left ankle was limited, and she "had difficulty stooping and bending because of the complaints of knee pain and complaints of weakness on the right." (Tr. 433). Dr. Strom ultimately concluded that claimant had radicular symptoms involving the right leg and while she had the ability to lift light objects, stand, hear, and speak, she had "difficulty standing for any length of time and cannot stoop or bend." (Tr. 434). Further, the claimant "could not squat or hop and her gait was somewhat wide based." (Tr. 434). Finally, the claimant's obesity limited "her ability to stand, stoop or bend" and presented difficulties with claimant's ability to bend at her waist. (Tr. 434).

State reviewing physician Dr. Moira Dolan, M.D. completed a Physical Residual Functional Capacity Assessment on March 12, 2007, in which she found that claimant could occasionally lift 20 pounds and frequently lift 10 pounds, stand and/or walk at least two hours in an eight-hour workday, sit for six hours in an eight-hour workday but could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 441). Further, Dr. Dolan opined that claimant should never climb ladders, ropes, or scaffolds. (Tr. 441).

Dr. Blough examined the claimant twice. First, on October 20, 2005, Dr. Blough found in connection with the claimant's workers compensation claim that she had reached maximum improvement and "sustained a 26% permanent partial impairment to her lumbar spine" which was expressed through "loss of range of motion, weakness of the left hip flexors and extensors, weakness of the lumbar flexors and extensors, and left lower extremity weakness and neuropathy." (Tr. 456). Dr. Blough also found that she had "sustained a 24% permanent partial impairment to her left leg/knee" and 44% permanent partial impairment to her left foot/ankle. (Tr. 456). Dr. Blough examined the claimant again on May 14, 2007, and noted that she had been awarded a 25% permanent partial impairment to the left foot/ankle and that her "range of motion is severely restricted in all planes." (Tr. 450). The claimant demonstrated severe weakness with resisted flexion and extension of the left ankle, and there was decreased sensation in the plantar and dorsal aspects of the left foot. (Tr. 450). Dr. Blough opined that the claimant had "sustained a change of condition for the worse in regard to her left foot/ankle since

her adjudication on June 5, 2006 and is in need of further medical evaluation and treatment." (Tr. 451).

State examining physician Dr. S.A. Chaudry, M.D. examined claimant on October 9, 2009. Dr. Chaudry's report included the following findings: i) limited range of motion of flexion, extension, rotation, abduction, and adduction in the right shoulder due to pain and stiffness; ii) weak plantar flexion in the left ankle; iii) weak left big toe movement; iv) painful range of motion in the knees; v) weak and slow heel and toe walking; degenerative arthritis in the lumbosacral spine and left knee; and vi) arthritis in the left ankle. (Tr. 555-56). Dr. Chaudry also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) in conjunction with his examination in which he made the following findings: i) claimant was capable of occasionally lifting and carrying up to ten pounds; ii) sitting for 20 minutes at one time and for a total of six hours in an eight-hour workday; iii) standing for five minutes at one time and for one hour in an eight-hour workday; iv) walking for five minutes at one time and for one hour in an eight-hour workday; v) occasionally reaching overhead and in general, handling, fingering, feeling, pushing, pulling, climbing stairs and ramps, balancing, stooping, and crouching; and vi) never climbing ladders or scaffolds, kneeling, or crawling. (Tr. 563-64). Regarding environmental limitations, Dr. Chaudry opined that claimant could only occasionally operate a motor vehicle and tolerate humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibrations but never be exposed to unprotected heights. (Tr. 565).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave

to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ concluded that Dr. Blough's opinion[2] regarding the claimant's functional limitations were not entitled to controlling weight because: (i) he found it was not based upon examination findings but instead upon the claimant's subjective statements; (ii) it was "inconsistent with the claimant's positive response to surgery and therapy[;]" and (iii) it was inconsistent with the findings of the examining and non-examining physicians (Tr. 20). There are, however, several problems with this analysis of the opinion of Dr. Blough. First, it is clear from the record that Dr. Blough *did* examine the claimant, *inter alia*, testing the range of motion of her lumbar spine, left leg/knee and left foot/ankle (Tr. 454-55). Second, the ALJ ignored many of Dr. Blough's findings, including his opinion that claimant had sustained a 26% permanent partial impairment to her lumbar spine, a 24% permanent partial impairment to her left leg and knee, and a 44% permanent partial impairment to her left foot and ankle. While the ALJ was not required to adopt these findings regarding impairment ratings, he should not have simply ignored them, because they contradicted the ALJ's findings. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing*

---

[2] It is not clear from the record that Dr. Blough was in fact the claimant's treating physician, but the ALJ apparently concluded that he was one and considered his opinion for controlling weight. And even if Dr. Blough was *not* the claimant's treating physician, the ALJ was nevertheless "'still required to consider his opinion, and to provide specific, legitimate reasons for rejecting it.'" *Wilson v. Barnhart*, 82 Fed. Appx. 204, 210 (10th Cir. 2003) [unpublished opinion], *quoting Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

*Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]; *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Finally, in choosing to reject Dr. Blough's opinion as inconsistent with the opinions of the state agency physicians, the ALJ should have explained why he found the latter to be more persuasive.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2.

Regarding the opinion of state examining physician Dr. Chaudry, the ALJ noted that he had taken "Dr. Chaudry's opinion in to consideration and [] added some additional postural limitations to the claimant's residual functional capacity based upon his evaluation." (Tr. 19).  But the ALJ did not specify the weight he was assigning to Dr. Chaudry's opinion *or* explain why he was rejecting some his restrictions but not others.

For instance, Dr. Chaudry found that claimant was limited in her ability to reach, handle, finger, feel, and push and/or pull. (Tr. 564). In addition, Dr. Chaudry placed several environmental limitations on claimant's ability to perform work. (Tr. 565). The ALJ erred by failing to explain why he was rejecting some of Dr. Chaudry's restrictions but not others. *Confere v. Astrue*, 235 Fed. Appx. 701, 703 (10th Cir. 2007) ("The ALJ mentions Dr. Heinbecker's assessment during his discussion of the evidence . . . but he does not state that he is rejecting any part of it and gives no indication as to why he would disregard [that part of] Dr. Heinbecker's conclusion that [was inconsistent with the ALJ's RFC determination]. . . . The ALJ could not have accepted and incorporated the opinions of the state agency physicians into his RFC because his RFC directly conflicts with [their] assessment.") [unpublished opinion]; *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

    Because the ALJ failed to properly evaluate the medical evidence of record as outlined above, the Commissioner's decision must be reversed and the case remanded to

the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work she can perform, if any and ultimately whether she is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma